2012 UT 40

Roger HOOBAN, Plaintiff and Petitioner,

v.

UNICITY INTERNATIONAL, INC.,
Defendant and Respondent.

No. 20090932.

Supreme Court of Utah.

July 3, 2012.

Chad C. Shattuck, Draper, for petitioner.

Steven C. Smith, Derrick C. Hughes, Santa Ana, CA, for respondent.

## AMENDED OPINION *

### Justice LEE, opinion of the Court:

¶ 1 Roger Hooban sued Unicity International for breach of a distribution agreement. The district court entered summary judgment for Unicity, holding that Hooban was not a party to the agreement and lacked standing to sue for its enforcement. Unicity then filed a motion for attorney fees under Utah's reciprocal attorney fees statute, Utah Code section 78B–5–826.[1] The district court denied the motion on the ground that section 826 was inapplicable given that Hooban was not a party to the underlying contract. Unicity appealed, and the court of appeals reversed, interpreting our opinion in *Bilanzich v. Lonetti*, 2007 UT 26, 160 P.3d 1041, to dictate a fee award in litigation that is based on a written contract where the contract allows at least one party to the litigation to recover fees.

¶ 2 We affirm. Section 826 applies here because, had Hooban's theory of the case prevailed in the district court, he would have been a party to the contract and the contract would have allowed Hooban to recover fees. The statute thus authorizes the court to award fees to Unicity, as the court of appeals correctly concluded.

## I

¶ 3 Unicity is a multilevel marketer of nutritional supplements and personal care products. It contracts with independent distributors who, in turn, recruit other distributors to sell its products to consumers.

¶ 4 In 1994, Unicity entered into a distribution agreement with an entity called H&H Network Services. Under this agreement, H&H agreed to policies and procedures that, among other things, limited H&H's right to assign or transfer its distributorship to a third party and secured Unicity a right of "first offer"—a right to purchase the distributorship instead of allowing it to be transferred to a third party.

¶ 5 The owners of H&H filed a bankruptcy petition in 2004, and Hooban ended up purchasing all of H&H's stock in an auction held by the bankruptcy trustee. Upon learning of the stock transfer, Unicity sought to exercise its "first offer" right to purchase the distributorship under the terms of the agreement. Hooban rejected Unicity's offer, asserting that he was the owner of H&H's stock and succeeded to its rights under the agreement. Unicity refuted Hooban's claim, insisting that Hooban was not a party to the agreement and had no right to operate under it as a Unicity distributor.

¶ 6 Hooban then filed this suit. His complaint sought enforcement of the distributorship agreement, including damages for Unicity's failure to recognize and compensate Hooban as a distributor. It also requested an award of attorney fees under a provision in the contract providing that "[i]n the event of a dispute, the prevailing party shall be reimbursed attorney's fees ... by the other party."

¶ 7 The district court granted Unicity's motion for summary judgment, holding that Hooban was not a party to the distribution agreement and thus lacked standing to sue under its terms. The court also upheld Unicity's "first offer" right under the contract and rejected Hooban's claim that he was authorized to operate as a distributer.

¶ 8 In the wake of this ruling, Unicity filed a motion for an award of its attorney fees. It based its request on Utah Code section 78B–5–826, which authorizes a fee award to "either party that prevails in a civil action based upon any promissory note, written contract, or other writing ... when the provisions of the ... writing allow at least one party to recover attorney fees."

¶ 9 The district court denied the motion. The court concluded that the statute "only applies to the parties to the contract in question 'and not any party to the litigation,'" quoting *Anglin v. Contracting Fabrication Machining, Inc.*, 2001 UT App 341, ¶ 10, 37 P.3d 267. The court further "opine[d] that

* The court revised paragraphs 10 and 26.

1. Prior to renumbering in 2008, this provision was codified in section 78–27–56.5.

the intent of the statute is to allow the party in the contract in a weaker position to have reciprocal rights to seek attorney's fees," establishing a "level playing field between all parties." Because Hooban did not execute the Unicity agreement and "cannot be bound by its terms," the court concluded that section 826 did not apply to the facts of this case.

¶ 10 Unicity appealed, challenging the district court's analysis and application of the reciprocal attorney fees statute. The court of appeals reversed. *Hooban v. Unicity Int'l, Inc.*, 2009 UT App 287, 220 P.3d 485. It held that Unicity was not barred from asking the district court for an award of attorney fees under section 826 as interpreted in *Bilanzich v. Lonetti*, 2007 UT 26, 160 P.3d 1041. The court of appeals concluded that, under *Bilanzich*, a party may recover attorney fees under section 826 if two requirements are satisfied: "first, the underlying litigation must be based upon a contract; and second, the contract must allow at least one party to recover attorney fees." *Hooban*, 2009 UT App 287, ¶ 9, 220 P.3d 485. Applying these criteria, the court concluded that Hooban's action was based on a written contract and that a provision of that contract allowed at least one party to recover its attorney fees. *Id.* ¶ 10. Finally, although Hooban was found "not to be a party to the [c]ontract," the court of appeals held that this did not bar application of section 826 "because the statute 'requires only that a *party to the litigation* assert the [contract's] enforceability as basis for recovery.'" *Id.* ¶ 10 (alteration in original) (quoting *Bilanzich v. Lonetti*, 2007 UT 26, ¶ 16, 160 P.3d 1041).

¶ 11 Hooban challenges this decision on certiorari. We review the court of appeals' decision de novo, granting no deference to its statutory construction. *State v. Arave*, 2011 UT 84, ¶ 24, 268 P.3d 163.

## II

¶ 12 The reciprocal attorney fees statute provides as follows:

> A court may award ... attorney fees to either party that prevails in a civil action based upon any ... written contract ... when the provisions of the ... contract ... allow at least one party to recover attorney fees.

Utah Code § 78B–5–826. This provision consists of a conditional if/then statement: (a) If the provisions of a written contract allow at least one party to recover attorney fees in a civil action based upon the contract, (b) then a court may award attorney fees to either party that prevails.

¶ 13 Largely ignoring this text, Hooban urges against the applicability of the statute here in light of its avowed purpose. Citing the legislative history, Hooban asserts that the statute was intended to "level the playing field" between contracting parties with disproportionate bargaining power, and he contends that it applies only to "equalize one-sided attorney's fees provisions in [disputes] between contracting parties." Because the contractual fee provision at issue is bilateral and Hooban was found not to be a party to the contract, Hooban claims that this case does not implicate the statutory purpose of leveling the playing field between parties to a unilateral contract.

¶ 14 Unicity, in response, contends that the statute reaches more broadly. Citing the statutory text, its drafting history, and our decision in *Bilanzich v. Lonetti*, 2007 UT 26, 160 P.3d 1041, Unicity insists that the statute is invoked upon satisfaction of two conditions: (a) the provisions of the contract at issue must "allow at least one party to recover fees" if that party had prevailed and (b) the underlying litigation must be "based upon a contract" in the sense that a party to the litigation must "assert the writing's enforceability as basis for recovery." Because the distribution agreement authorized a fee award for "at least one party," and because Hooban was a party to the litigation and asserted the enforceability of the agreement as his basis for recovery, Unicity claims that these conditions are met and that it is entitled to a fee award.

¶ 15 We agree with Unicity and affirm. In so doing, however, we clarify some latent ambiguities in section 826 that are implicated by the parties' competing arguments. First, we hold that the statute applies even in the

face of a bilateral fee clause, rejecting Hooban's contrary arguments based in legislative history and presumed statutory purpose. Second, in embracing Unicity's construction of the statute, we clarify the meaning of the term "party" as it is used in the statute, concluding that Unicity is entitled to fees because it was the prevailing party and because Hooban would have been a party to the contract if he had prevailed in this suit.

## A

¶ 16 Hooban urges us to limit section 826's reach to contract disputes involving unilateral fee provisions. In support of this view, Hooban points to a statement of Representative Richard Maxfield, the sponsor of the bill that became the reciprocal fee statute, in which he characterized "[t]he purpose of the above-proposed legislation" as putting "those who deal with the more sophisticated on more equal footing," or in other words as addressing the circumstance of "[b]anks, corporations, etc., having their own legal staff and custom made forms ... that do[ ] not cut both ways in the event of defaults and/or misconduct." H.B. 175, 46th Leg., Gen. Sess. (Utah 1986) (Rep. Maxfield's introduction and bill as introduced). Hooban also quotes the bill as originally introduced by Representative Maxfield, which provided that "the right to recover legal expenses shall be reciprocal" in "a civil action where a promissory note, contract, or other writing permits one of the parties but not the other to recover attorney fees." *Id.* Finally, Hooban cites *Bilanzich,* in which we explained that "[t]he

statute levels the playing field by allowing both parties to recover fees where only one party may assert such a right under contract, remedying the unequal allocation of litigation risks built into many contracts of adhesion." 2007 UT 26, ¶ 18, 160 P.3d 1041. Together, Hooban argues, these sources sustain a narrow construction of the statute that would confine it to contracts with unilateral fee provisions.

¶ 17 We disagree. Our evaluation of the statute's purpose must start with its text, not the legislative history. Where the statute's language marks its reach in clear and unambiguous terms, it is our role to enforce a legislative purpose that matches those terms, not to supplant it with a narrower or broader one that we might infer from the legislative history.[2] That history might identify a social problem that first sparked the legislature's attention. But we cannot presume that the legislature meant only to deal with that particular problem, as legislative bodies often start with one problem in mind but then reach more broadly in their ultimate enactment.[3] And when they do, we cannot limit the reach of their enactment to the ill that initially sparked their interest.

¶ 18 Hooban asks us to do just that. He invokes the views of a single legislator as to the statute's "purpose" without regard to the purpose set forth in the statutory text. That is inappropriate. The statute clearly provides that it is triggered "when the provisions" of a contract "allow *at least one party* to recover attorney fees." Utah Code § 78B–5–826 (emphasis added). That text

2. *See Bd. of Governors of Fed. Res. Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 373–74, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) (holding that "[t]he 'plain purpose' of legislation ... is determined in the first instance with reference to the plain language of the statute itself" and explaining that "[i]nvocation of the 'plain purpose' of legislation at the expense of the terms of the statute itself takes no account of the processes of compromise and, in the end, prevents the effectuation of congressional intent"); *Olsen v. Eagle Mountain City,* 2011 UT 10, ¶ 23, 248 P.3d 465 ("[S]peculation as to a contrary legislative purpose cannot quash our construction of [a statute's] plain language."); *Berrett v. Purser & Edwards,* 876 P.2d 367, 370 (Utah 1994) ("[C]ourts are not to infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and the court has no

power to rewrite the statute to conform to [a legislative purpose] not expressed [in the text].").

3. *Brogan v. United States,* 522 U.S. 398, 403, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998) ("[T]he reach of a statute often exceeds the precise evil to be eliminated."); *Landgraf v. USI Film Prods.,* 511 U.S. 244, 286, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("Statutes are seldom crafted to pursue a single goal, and compromises necessary to their enactment may require adopting means other than those that would most effectively pursue the main goal."); *Olsen,* 2011 UT 10, ¶ 23 n. 6, 248 P.3d 465 ("[M]ost statutes represent a compromise of purposes advanced by competing interest groups, not an unmitigated attempt to stamp out a particular evil.").

prescribes the statute's express purpose with regard to the kind of contractual fee provision that is implicated. We have no license to find a narrower purpose in the legislative history. Representative Maxfield may have thought the statute was aimed only at unilateral fee provisions. Or not. He may have just been saying that unilateral fee provisions were the motivating target in the legislature's crosshairs. Either way, the statutory text doesn't speak of fee provisions authorizing recovery for "only one" party, but of "at least one," and "at least one" clearly means one or more.

¶ 19 *Bilanzich* is not to the contrary. Our reference to unilateral fee provisions was simply illustrative of the prototypical scenario implicated by the statute, not an exhaustive description of the statute's coverage.

¶ 20 The fact that the introduced version of the bill—but not the enrolled version—spoke of unilateral fee provisions does not help Hooban's cause. It cuts the other way. Hooban is ultimately asking us to revive text that never survived the legislative process. That we decline to do. We hold that the statute means what it says, and applies when a contract entitles "at least one party"—one or more—to recover fees.[4]

## B

¶ 21 Hooban next challenges Unicity's right to recover fees on the ground that he was deemed a non-party to the contract in the proceedings below. Because the statute is implicated in cases in which "*either party*

... prevails in a civil action based upon" a contract, Utah Code § 78B–5–826 (emphasis added), Hooban construes the statute to be limited to actions between litigants that are both signatories to the contract at issue. And because Hooban was found not to be a party to the distribution agreement, he insists that Unicity has no right to recover its fees under section 826.

¶ 22 We again disagree. As we noted in *Bilanzich*, an action is "based upon" a contract under the statute if a "party to the litigation assert[s] the writing's enforceability as basis for recovery." 2007 UT 26, ¶ 15, 160 P.3d 1041. That condition is met here because Hooban rested his claims in the district court on a right to enforce the Unicity distribution agreement.

¶ 23 As Hooban notes, the statutory trigger for a fee award—"when the provisions of the ... contract ... allow at least one party to recover attorney fees"—does appear to refer to a party to a contract, and not just the litigation. In context, the statute makes an obvious reference to contracting parties and their contractual attorney fees provisions. After all, the "provisions of a contract" would not apply to a mere party to the litigation who is unmentioned in the contract. And since Hooban was deemed a stranger to the distribution agreement, he insists that the statute is not implicated and that Unicity has no right to fees under its provisions.

¶ 24 Hooban's argument rests on the premise that the question whether "the provisions of the ... contract ... allow at least one party to recover attorney fees" is evalu-

---

4. As Hooban notes, our opinion in *Giusti v. Sterling Wentworth Corp.* cited *Bilanzich* for the proposition that a bilateral fee provision does not satisfy the statute because it does not create " 'an unequal exposure to the risk of contractual liability for attorney fees.' " 2009 UT 2, ¶ 77, 201 P.3d 966 (quoting *Bilanzich v. Lonetti*, 2007 UT 26, ¶ 19, 160 P.3d 1041). But our cases cannot be read to override the clear terms of the statute. Our reference in *Bilanzich* to unequal risk exposure was not a statement of the statute's coverage; it was simply an articulation of one of the factors that courts may consider in exercising the discretion conferred by statute to shift fees to a prevailing party. *See Bilanzich*, 2007 UT 26, ¶ 17, 160 P.3d 1041.

Our decision in *Giusti* is best understood under this rubric. Both litigants in *Giusti* were parties to a contract with a bilateral fee provision that awarded fees to "the non-defaulting party" "[i]n the event either party defaults." 2009 UT 2, ¶ 72, 201 P.3d 966 (emphasis omitted). And the district court found that, while the defendant was the prevailing party in the litigation, neither party had defaulted on the contract. *Id.* ¶ 73. The contract's terms therefore did not allow either side to recover fees, and we affirmed that decision. Our affirmance is perhaps best understood as resting on the discretion recognized in the statute in deciding whether to award fees. When both litigants are parties to a contract with a bilateral provision that awards fees under specific circumstances (in *Giusti*, a "default"), a district court does not abuse its statutory discretion by treating the contract as if it occupies the fee-shifting field and declining to award fees under the statute.

ated in terms of the parties' status as actually found by the court. It is certainly true that the distribution agreement does not "allow at least one party to recover attorney fees" under the circumstances as found by the court. Hooban was deemed a stranger to the contract, and as such he had no rights to enforce it or obligations under it.

¶ 25 Unicity offers an alternative formulation, however. Unicity asks us to evaluate the question whether the contract allows "at least one party to recover attorney fees" under a hypothetical alternative in which the case was resolved the other way. Under this approach, Unicity notes that if Hooban's suit had been successful, he would have been deemed a "party" to the distribution agreement and in that event the contract would have allowed "at least one party to recover attorney fees." Unicity thus asserts a right to recover fees under the statute when the provisions of the underlying contract would allow at least one party to recover fees if it had prevailed in the action based upon the contract.

¶ 26 We adopt Unicity's formulation and thus affirm its right to seek an award of fees from the district court. The classic application of the statute involves a one-sided fee provision in a dispute between the parties to the contract.[5] And in that archetypal scenario, the statutory analysis of whether the contract allows "at least one party to recover" is undertaken in the hypothetical— under an alternative consideration in which the tables were turned and the opposite party prevailed. Because only that approach preserves the classic case covered by the statute, we interpret its language to contemplate the hypothetical analysis suggested by Unicity.

¶ 27 A concrete example may help to confirm this point. If Hooban were a Unicity employee subject to a contract providing that the "employee shall pay the employer's attorney fees in an action establishing the employee's breach of the employment contract," and Hooban prevailed in an action by Unicity for

breach of contract, Hooban would be entitled to recover his fees under section 826. This is, in fact, the classic, archetypal case for fee shifting under the statute.[6] But fees are shifted to Hooban in this example only under Unicity's approach, in which the question whether the contract would "allow at least one party to recover attorney fees" is evaluated under the facts and law as they would have existed had Unicity prevailed. Under those alternative circumstances, Unicity would be entitled to fees by contract because it would have established the employee's breach, so Hooban would be entitled to his fees under section 826 if he prevailed.

¶ 28 That result would not obtain, however, under Hooban's formulation of the statutory inquiry. If the trigger for a fee award under section 826 turned on whether the contract "allow[s] at least one party to recover attorney fees" under the facts and circumstances *as found by the court*, Hooban would receive no fees as the prevailing party under the classic scenario for fee shifting. Under that approach, after all, the court has determined that the employee did not breach the contract, and thus it is not the case that "the provisions of the ... contract ... allow at least one party to recover attorney fees."

¶ 29 We accordingly reject Hooban's formulation of the statutory inquiry. The statute cannot reasonably be interpreted to foreclose its application to the core circumstance that gave rise to its enactment. Thus, we interpret section 826 in accordance with Unicity's formulation, which inquires whether the contract would allow at least one party to recover fees in the hypothetical alternative scenario in which the opposing party prevailed.

¶ 30 This is the approach we took in *Bilanzich*, 2007 UT 26, 160 P.3d 1041. The contract at issue in *Bilanzich* contained a unilateral fee provision in favor of Lonetti. *Id.* ¶ 4. Bilanzich prevailed, however, on the theory that the contract was invalidated and unenforceable due to failure of a condition precedent. *Id.* ¶ 6. We held that the unilateral fee

---

**5.** *Bilanzich*, 2007 UT 26, ¶ 18, 160 P.3d 1041 ("The statute levels the playing field by allowing both parties to recover fees where only one party may assert such a right under contract....").

**6.** *See also, e.g., Dejavue, Inc. v. U.S. Energy Corp.*, 1999 UT App 355, ¶ 18, 993 P.2d 222 (awarding statutory fees to the prevailing party, the lessee, when the contract at issue contained a unilateral fee provision in favor of the lessor).

provision triggered the statute despite the contract's invalidity. *Id.* ¶ 16. This conclusion makes sense only if the statutory trigger for fee shifting considers the facts and circumstances as they would have existed had the losing party's theory of the case prevailed. Under the district court's decision in *Bilanzich*, after all, the entire contract was invalid and there was thus no enforceable attorney fee clause. *See id.* ¶ 11 n. 4 (explaining that the fees provision was not severable from the remainder of the contract). Thus, the provisions of that contract allowed fees to at least one party only under the alternative scenario in which Lonetti's theory had prevailed and the contract had been valid.

¶ 31 We confirm this approach and accordingly uphold Unicity's right to fees. Under Hooban's theory of the case in the district court, Hooban was a party to an enforceable, written contract with Unicity. The contract contained an attorney fees provision that allowed "the prevailing party" to recover fees "[i]n the event of a dispute." Had Hooban prevailed, the contractual provisions would have entitled at least one party—Hooban—to attorney fees, and the statutory trigger for fee shifting is therefore met. Section 826 thus affords a basis for an award of fees to the party that ultimately prevailed in the district court—Unicity.

### III

¶ 32 A party is entitled to reciprocal fee-shifting by statute "when the provisions" of a contract would have entitled at least one party to recover its fees had that party prevailed "in a civil action based upon" the contract. That condition is met in this case because, had Hooban prevailed in this suit, he would have been a party to the contract upon which the suit is based and would have been contractually entitled to attorney fees. We accordingly affirm.

Justice LEE authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice DURHAM, and Justice PARRISH joined.